The final case in which we'll hear oral argument this afternoon is No. 05-5151, Pappas v. United States. Mr. Blodnick, I just want to confirm, welcome to the court. You've reserved five minutes for rebuttal? Yes, Your Honor. And you understand how the light system works? Yes, Your Honor. Okay, well, go ahead whenever you're ready. Your Honor, this is a case that is both unique factually and also procedurally. And Judge Horne's decision, which we are appealing, is a motion to dismiss, and therefore all the facts of the complaint should be deemed true. And Judge Horne basically bases her decision, taking Pappas' along the line of Kanye and his progeny, as a criminal case. Point of fact, seven people have ruled differently. Second Circuit, by unanimous decision, found that it was a civil case, and it says it was a case involving national security. And when the Second Circuit ruled on this, it was based on a motion by the federal government for an injunction to restrict Mr. Pappas from publicizing acts that had occurred, and they brought the action under SIPA. And the court ruled that at least part of the actions took place prior to the time the criminal case took place. Therefore, in order for the government to succeed, they had to bring a civil action. The government did bring a civil action. In the Eastern District. In the Eastern District, which makes it unique from all the other cases. Well, do you agree that if the government hadn't sued first, that this would be governed by Sanders and the other cases, and that you would not be able to seek damages in the Court of Federal Appliance? No, I do not, Your Honor, because if the Second Circuit's holding is correct, the agreement was made prior to the criminal case. And it was a civil case. What difference does it make that it was made before the criminal case? Because it was made separate and apart. Mr. Pappas, for the services rendered, was offered money compensation. I don't think I'd be sitting here today. I think everyone realizes that the services that Mr. Pappas rendered were proprietary in nature. The compensation, on the other hand, was sovereign in nature. The fact that they were not going to charge him with any crimes. This is different than the other cases. And the fact that this case is under seal now has nothing to do with Mr. Pappas' indictment. There was nothing involved in Mr. Pappas' indictment that involved national security. Mr. Pappas was retained to do some high-risk secret items, which he would have been well compensated for if it wasn't another alternative type of compensation offered to him. The other alternative being that the government would not proceed with the criminal matter that was then under investigation. Under investigation, they would have paid him money. That would have been the other choice. But one way or another, Mr. Pappas was entitled to compensation for the services he rendered to the government. And that is what happened in this case. He rendered very valuable services to the government in 1993. And thereafter, the government chose. And I agree that the government had a right to breach the agreement. In other words, you cannot force the sovereign not to go ahead with the criminal charges. But therefore, there was an implied contract that he was to be compensated. And Justice Holmes said that in every case where there's a breach of contract, money damages is always an alternative. And that was what's available here. And the fact of the matter is that the Second Circuit found that it was a civil case. Judge Platt found it was a civil case. Judge Siebert found it was a civil case. The government actually sued it as a civil case. And we sued it as a civil case. And Judge Horne, in effect, has overruled the Second Circuit by her ruling and ignored their holding. No, she's really just said that. I mean, she's basically following the Kanye or the Kanye approach and saying that you don't have a claim for money damages here. No, but Kanye was—in the Kanye case, what he—it was involved in one transaction. What he testified to as a railway—I think railway employee, as vice president. He testified in the case that he was subsequently indicted for in the same transaction. What Mr. Pappas did was services had nothing to do with his criminal charges. It wasn't criminal in nature. He wasn't informing on people. But why should that make a difference? Why should that make a difference? Because the question—the government's promise relates to the criminal charges. That's in consideration, Your Honor. But that's not the—the primary objective of this was the government wanted a service from Mr. Pappas, which they agreed to pay for. If the way they agreed to pay for it is not enforceable— What would you say they agreed to pay for? They agreed to certain terms in exchange. But when you say paid for, I mean there was never any money in— Absolutely not. There was never consideration of money. The government has—in criminal matters, investigative and criminal matters, the government makes arrangements all the time. Whether it's, you know, if you testify, we will request a downward departure based on assistance. Or if you are willing to wear a wire under these circumstances, we will speak on your behalf before the trial judge who is going to be sentencing. All those kinds of things. What I'm trying to figure out is where you draw the line. Clearly, those don't turn into damages actions if the defendant or the putative plaintiff is unhappy with the degree of compliance and feels that the government hasn't fully complied, right? You can't simply go into the Court of Federal Claims and sue for money damages on the basis that you think that the government didn't give as enthusiastic a statement as you think should have been given, or for that matter, give no statement at all, right? All the cases that are cited— Let me make sure we're on the same page here. If you assume that it was a criminal case, let's assume, for example—and I'm going to cite a case that I don't believe is in our brief—the Winstar case where the government agreed not to change the interest rates on the Federal Home Loan Association, which was binding the Congress not to change the rates. So that agreement was not enforceable anymore. The court held they could get money damages. To come back to my example, which is the one I really wanted to get an answer on, in my example, the government says we will speak enthusiastically on your behalf before the sentencing judge if you cooperate in the following ways. And the putative plaintiff is not happy with the degree of the government's allocution on his behalf. Can he sue for damages? Absolutely not. All right. That's clearly a Sanabella-type arrangement where you cannot sue. All the judge can do is let you withdraw your plea or— So it's not true, as Holmes apparently forgot, Sanabella-type situations that you can't. It would be a contract, but it's not a contract which is compensable in damages, right? Right. But this is not one of those cases. If you assume it's a Kanye-type case, I've lost. What Mr. Pappas' services did had nothing to do with any criminal proceeding or criminal act. A promise not to charge him. Basically, what Mr. Pappas—they asked Mr. Pappas to do some unique services that there were very few people available to do. Am I allowed to disclose what the services are? It's not necessary. All right. We understand. All right. But those—great risk and everything else, and I'm sure if he had asked the government at that time for monetary compensation, he would have been entitled to it. Mr. Bond, would you be—would you say we would be in a Kanye situation if at the time of the arrangement he had been under indictment? Are you saying that—because it's clear that at the time that the arrangement was made or the contract was entered into, Mr. Pappas was not under indictment. He was the subject of a criminal investigation, but he wasn't indicted. Now, would it be different in your view if at the time the agreement was made he had been indicted? It's getting closer. I'm not sure. But why should that—no, I hear what you're saying, but why should it be any different? Because— I mean, he was the subject of a criminal investigation. Well, no. First of all, I've never had any discovery on this case, so I don't know what sort of investigation. Were they looking at he might have failed to pay one tax return? I don't know what that investigation was. In other words, we—as I sit here now, we're at a tremendous disadvantage. We've never had an opportunity for discovery. This is a motion to dismiss. What he was asked to do had nothing to do with any investigation he had. All the cases that Judge Warren cites all have something to do with what they did. Right, but you're saying what he was asked to do—in other words, assume for the moment they've been investigating him for a conspiracy to aid in the transportation of illegally stolen goods in interstate commerce. And he had said, all right, I will wear a wire with respect to my accomplices in that enterprise. What you're saying is that's different from here because he was asked to do something that didn't relate to what he was under investigation. But why should that make a difference? Let's assume instead of Mr. Pappas— I mean, you're right on the facts, but why should it make a difference? Because I think the crux of this case was civil. And there's some dictum in a number of cases where there's no case holding it. They say a case that is partly criminal and partly civil is treated differently. I've seen that citation a couple of times, although I have not found any case lawyer. But let's assume Mr. Pappas was asked to build a prison for the United States. And in consideration of building the prison, he would not be indicted for any charges for anything he did up until then. I think clearly, Mr. Pappas, if the government did not comply with those charges, he would be entitled to get paid for building the prison. I mean, he's performed a proprietary service for the government. And that's what he did in this case. The fact that the government chose not to do it certainly was a sovereign act that they had a right to do. But then he's entitled to damages, whether he's entitled to the quantum merit for the value of the services or whether he's entitled to the benefit of the bargain is for another day, if I ever get beyond this point. But the fact of the matter is what he did was proprietary. Mr. Bartlett, you're into your rebuttal time. You've got about three minutes and 45 seconds left, but we'll restore your whole rebuttal. We'll give you your full five minutes, and we'll hear from Mr. McFarland. Thank you, Your Honor. Mr. McFarland? Good afternoon, Your Honors. My name is Thomas McFarland. I'm an assistant United States attorney for the Eastern District of New York. This is a Kanye case, Your Honors. There can be no question about it. This is the United States acting in its sovereign capacity on an alleged agreement involving prosecutorial immunity. Yeah, but there is one difference, and that is in Kanye and I think in Saunders, too, both sides of the bargain related to the criminal proceedings, whereas in this case, one side of the bargain did not. So you've got a situation in which the government's part of the bargain is enforceable in civil court, and according to you, the defendant's part of the bargain is only enforceable in criminal court. Now, does that make a difference? I mean, it is a distinction between those earlier cases. I think it's a distinction without a difference, Your Honor. And I think the reason is I think Kanye and his progeny, including the Sanders case, which you and Judge Schall are well familiar, I think the important thing is you look to what is it that's the nature of the consideration to this plaintiff here, Mr. Pappas, and the consideration that he alleges he was to receive was prosecutorial immunity, a sovereign act. And it's not as if Mr. Pappas had no way of vindicating this alleged rioting. And in fact, he attempted to by trying to get the indictment thrown out of the Eastern District. Ultimately, he put that aside because he pled guilty. And so that mooted any reason for dismissing the indictment.  He availed himself of the remedy for a time, decided to forego the remedy and pled guilty. And now he has no other remedy, civil or criminal. Let's suppose the government brought Sugan and said you didn't keep your bargain. We want damages or we want an injunction against you. And he says my defense is that you went ahead and prosecuted me anyway in violation of the agreement. Can that defense be litigated in civil court? That's an excellent question, Your Honor. I'm not familiar with any situation where it has been. The normal thing would be to try and get an indictment against you dismissed. But I suppose that that would be a defense or could be a defense. Could be a defense with the consequence that the breach of the government's promise could end up being litigated in civil court as a defense, right? As a defense, perhaps. I did want to clarify one thing. The Second Circuit case involved the SEPA statute. It had nothing to do with any assertion by Mr. Pappas of a prosecutorial immunity agreement. That was strictly on SEPA. The Second Circuit did not decide. It was the government's affirmative case. That's right. The United States had obtained an order under SEPA that the Second Circuit found wanting. And the case was sent back to the district court to see if there was some contractual agreement that could be the basis for enjoining Mr. Pappas from speaking of these experiences that he had. And that was the genesis of what has become this case. Ultimately, because of his plea agreement, we dropped our injunction action, but the counterclaim remained, which ultimately ended up here. Your Honors, unless you have further questions, I would just urge you to affirm the judgment of Judge Horn and end this matter for good. Mr. Farrell, thank you. Blondick, as I say, you have your full five minutes if you wish to use it. Your Honors, I understand the issues. I think you have it clearly. I think it's a very close case. I think you look at Bailey. Bailey also, there were some sovereign issues in there in some of the other cases. I don't think—I think Pappas is unique. I think the court could go either way, but I don't think it follows Kanye. I think there's definitely a clear distinction, both in the timing. Also, I think some weight should be given to the Second Circuit, which I think Judge Horn— Is the critical point for you, Mr. Blondick, that the activity which—the things he agreed to do were totally separate and distinct from the matters for which he was being investigated? Yes, and they were also proprietary, not sovereign. That's my whole case. Thank you. Thank you. Thank you, Mr. Blondick. Again, thank you, Mr. McFarland. The case is submitted, and that concludes the hearings for this afternoon. All rise. The hour of the court is now adjourned until tomorrow at 10 a.m.